IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JUAN RESTREPO, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civ. Action No. 18-228-GMS ) |
| PERRY PHELPS, et al., | ) ) |
| Defendants. | ) ) |

## MEMORANDUM

### I. INTRODUCTION

The plaintiff, Juan Restrepo ("Restrepo"), an inmate at the James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging violation of his constitutional rights, violations of the UCC (*i.e.*, Uniform Commercial Code), and violations of the Vienna Convention. (D.I. 3.) He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

### II. BACKGROUND

Restrepo alleges the defendants engaged in wrongful conduct from February 2017 to date. He states that he has been diagnosed as "severely mentally ill," requiring treatment and placement in a residential treatment setting as required by law and the agreement and order entered on September 1, 2016 in *Community Legal Aid Society, Inc. v. Coupe*, Civ. No. 15-688-GMS at D.I. 38 and D.I. 40 ("Civ. No. 15-688-GMS"), a case that raised issues regarding improvement of mental health care for inmates, improving conditions of confinement and other aspects of restrictive housing, and reducing the length of disciplinary sanctions and the use of

1

other forms of restrictive housing. Restrepo alleges that the defendant the Delaware Department of Correction ("DOC"), by and through its Commissioner Perry Phelps ("Phelps"), also a defendant, violated the law and the terms of the settlement in Civ. No. 15-688-GMS.[1] Restrepo alleges that the defendant the State of Delaware ("State of Delaware") allowed the defendant the Delaware Department of Justice ("DOJ") to place him in the custody of the DOC and house him at the defendant VCC which has been under the supervision of the defendant VCC warden Dana Metzger ("Metzger") for several months. Restrepo alleges that none of the named defendants stepped up to ensure the protection of his rights, and this has resulted in a downward mental spiral.

Restrepo relies upon Civ. No. 15-688-GMS as requiring the treatment of severely mentally ill inmates held in solitary confinement at the VCC. He alleges that beginning February 1, 2017,[2] treatment was stopped for all severely mentally ill inmates, mental health conditions exacerbated, more than six months passed, and treatment is still non-compliant with Civ. No. 15-688-GMS order. Restrepo alleges that his lack of treatment for an extended amount of time violates the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, Article Six of the United States Constitution, UCC 1-306 and 1-308, and the Vienna Convention.[3] It is

---

[1] Plaintiff states that there has been a breach of Civ. No. 15-688-GMS and, therefore, the case may be reopened. (D.I. 3 at 16.) However, enforcement of the agreement and order in Civ. No. 15-688-GMS is initiated upon the filing by the plaintiff or by a party to that action. Restrepo was not a named party to Civ. No. 15-688-GMS, and he may not enforce its terms by filing this lawsuit.

[2] The VCC was the site of a February 1, 2017 prison siege when corrections officer Lt. Steven Floyd ("Lt. Floyd") was killed and three other DOC staffers were taken hostage.

[3] The claims raised under the Article Six, UCC and the Vienna Convention are frivolous, nonsensical, will not be addressed, and will be dismissed.

2

Restrepo's position that when the State of Delaware, through the DOC, subjects an inmate like himself to an Eighth Amendment violation, it forfeits or loses the right to any further confinement of Restrepo who is serving a sentence following his conviction in Criminal Action ID No. 1002011017.[4] (D.I. 3 at 16, 17.) Restrepo contends this Court has jurisdiction to release him for treatment. (*Id.*)

The defendants are sued in their personal capacities. Restrepo seeks compensatory and punitive damages, declaratory relief, and injunctive relief in the form of an immediate and permanent transfer (*i.e.*, unconditional release) from his confinement by the State of Delaware and the DOC.

### III. STANDARD OF REVIEW

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*,

---

[4] Restrepo was convicted in the Superior Court of the State of Delaware in and for Kent County of second degree murder, possession of a deadly weapon during the commission of a felony, motor vehicle theft, and carrying a concealed dangerous instrument. *Restrepo-Duque v. State*, 2015 WL 92358145, 130 A.3d 340 (Del. 2015) (table). His conviction was affirmed by the Delaware Supreme Court. *Id.*

3

515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Restrepo proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Restrepo leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See*

4

*Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotations omitted). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. DISCUSSION

### A. Eleventh Amendment

Named as defendants are the State of Delaware, the DOC, the DOJ, and the VCC. These defendants are immune from suit. The Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens, regardless of the relief sought. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984); *Edelman v. Jordan*, 415 U.S. 651 (1974). The DOC and DOJ are agencies of the State of Delaware, and the VCC

falls under the umbrella of the DOC. The Eleventh Amendment protects states, their agencies, and departments from suit in federal court regardless of the kind of relief sought. *Pennhurst State School & Hosp.*, 465 U.S. at 100. "Absent a state's consent, the Eleventh Amendment bars a civil rights suit in federal court that names the state as a defendant." *Laskaris v. Thornburgh*, 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). Delaware has not waived its immunity from suit in federal court; although Congress can abrogate a state's sovereign immunity, it did not do so through the enactment of 42 U.S.C. § 1983. *See Brooks-McCollum v. Delaware*, 213 F. App'x 92, 94 (3d Cir. 2007) (unpublished). In addition, dismissal is proper because none of the foregoing defendants are persons for purposes of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71(1989); *Calhoun v. Young*, 288 F. App'x 47 (3d Cir. 2008) (unpublished).

Accordingly, the court will dismiss all claims against the State of Delaware, the DOC, the DOJ, and the VCC pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) and § 1915A(b)(2) as they are immune from suit.

### B. Respondeat Superior

The complaint is quite lengthy, but when its facts are distilled, it is evident that Restrepo has named Phelps and Metzger as defendants based upon their supervisory positions. It is well established that claims based solely on the theory of respondeat superior or supervisor liability are facially deficient. *See Ashcroft*, 556 U.S. at 676-77; *see also Solan v. Ranck*, 326 F. App'x 97, 100-01 (3d Cir. 2009) ("[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior").

The complaint alleges that the VCC is under the supervision of Metzger. It alleges that Phelps violated the terms of the agreement in Civ. No. 15-688-GMS, but does not allege Phelps' personal involvement or knowledge of Restrepo's complaints. Finally, the complaint alleges that Phelps and Metzger violated Restrepo's constitutional rights by allowing "the other in command to effect such violations" and have not "stepped up" to ensure the upholding and protection of Restrepo's rights. (D.I. 3 at 6.) Restrepo's claims rest impermissibly upon a theory of supervisory liability and, therefore, the claims against Phelps and Metzger will be dismissed as frivolous pursuant 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### C. Retaliation

The complaint alleges that following the February 1, 2017 prison siege, a faction of the DOC sought violent retaliation against any and all inmates due to false claims that the death of Lt. Floyd was the result of treatment that severely mentally ill inmates received as a result of Civ. No. 15-688-GMS. Restrepo alleges that because he is a severely mentally ill inmate, he is a perfect target for retaliation. (D.I. 3 at 9.)

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution actionable under § 1983." *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (ii) he suffered some adverse action at the hands of prison officials, and (iii) "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to take that action." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (citation omitted).

Even when viewing the facts in the light most favorable to Restrepo, they do not state a retaliation claim. The presumed acts of retaliation are not directed towards a particular defendant, they are not described, and finally, the allegation do not refer to constitutionally protected conduct taken by Restrepo. Therefore, the claim will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

**D.     Recreation**

Restrepo complains about the amount of recreation time he is provided. For an approximate four month period following the February 2017 prison siege, he was provided daily recreation of one hour or less; beginning June or July 2017, two hours of daily recreation was scheduled; and beginning November 2017, inmates have been provided out-of-cell recreation time of 17 ½ hours per week. (D.I. 3 at 9, 10.)

The denial of exercise or recreation can result in a constitutional violation. "[M]eaningful recreation 'is extremely important to the psychological and physical well-being of the inmates.'" *Peterkin v. Jeffes*, 855 F.2d 1021, 1031 (3d Cir. 1988) (quoting *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979)); *see also Loe v. Wilkinson*, 604 F. Supp. 130, 135 (M.D. Pa. 1984). The Third Circuit has never extensively addressed in a precedential opinion when a deprivation of outdoor exercise amounts to a substantial deprivation, but notes that other appellate courts have suggested that when making this determination, courts should consider the totality of the circumstances, including, but not limited to, the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation. *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (citing *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992); *Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th

8

Cir. 1995); *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)). Thus, a constitutional violation will occur when the deprivation of exercise extends for a prolonged period of time and tangible physical harm resulting from the lack of exercise is demonstrated.

Here, Restrepo does not allege that he was deprived of exercise for prolong periods of time. To the contrary, the allegations indicate that he was provided recreational time. Nor does Restrepo allege tangible physical harm resulting from lack of exercise. The claim alleging a constitutional violation is frivolous and will be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), and 42 U.S.C. § 1997e(c)(1).

### E. Mental Health/Medical Needs

The complaint alleges that on February 1, 2017 (the date of the prison siege), mental health treatment was stopped for all severe mentally ill inmates, privileges were taken away, mental health conditions exacerbated, more than six months passed and the treatment continued as non-compliant with Civ. No. 15-688-GMS. (D.I. 3 at 7, 17.) Restrepo alleges that for months he only received out-of-cell time of one hour or less per day, then for months the out-of-cell time was two or less hours per day. (*Id.* at 17.) He alleges that for months there was no structured group therapy, and then when group therapy was scheduled for three hours per week, he must forfeit recreation if he attends the treatment sessions. (*Id.*) Restrepo's litany of mental health treatment complaints follows:

(1) since November 2016, one-on-one visits with psychologists and mental health staff have not been private;

(2) during February 2017, the DOC denied him one-on-one treatment with mental health staff;

9

(3) since February 2017, for an approximate four month period, there was no mental health group programming;

(4) beginning June 12, 2017, for a three month period, group programming was one hour or less, three times per week;

(5) Restrepo was seen by mental health personnel on August 23, 2017, asked to see mental health providers on August 24 and denied, asked to again see mental health providers on August 25, 2017, and seen that day by a mental health staff member and a psychologist;

(6) on August 26, 2017, Restrepo experienced "a fully severe mental breakdown," attempted suicide, was placed on psychiatric closed observation, and the next day went on a hunger and liquid strike;

(7) on September 21, 2017 the DOC refused to allow Restrepo to see a mental health staff psychologist;

(8) after he was locked in his cell on October 5, 2017, Restrepo told corrections officers he needed to see mental health "ASAP", but mental health was never made aware of his urgent request so he did not see a mental health staff member under the next day; and

(9) when Restrepo discussed his distress with mental health staff, the door was not closed, and DOC corrections officers listened to everything that was said.

(D.I. 3 at 9, 10, 11, 12, 14, 15.)

Finally, Restrepo alleges that on September 1, 2017, after he was forced to walk barefoot and naked across the prison compound, he requested medical treatment, which the DOC denied. He requested medical the next day, September 2, 2017, and it was again denied. He received medical treatment on the afternoon of September 3, 2017. (D.I. 3 at 13.)

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate

10

indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. 2010) (unpublished) (quoting *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000)). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. at 107. Moreover, allegations of medical malpractice are not sufficient to establish a Constitutional violation. *White v. Napoleon*, 897 F.2d at 108-09 (citations omitted); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (negligence is not compensable as a Constitutional deprivation). Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

In addition, the U.S. Court of Appeals for the Third Circuit has concluded that prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor.' *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). The Third Circuit clarified that "[i]f a

11

prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d at 236 (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

Even when reading the Complaint in the most favorable light to Restrepo, he fails to state an actionable constitutional claim against the named defendants for deliberate indifference to a serious medical need. Many of the claims speak to Restrepo's dissatisfaction with the treatment provided, while indicating that he receives treatment. Other allegations that could potentially state a claim fail to identify an individual who allegedly committed the wrongful act or who failed to take any action. As currently pled, the complaint contains frivolous allegations and fails to state claims for deliberate indifference to serious mental health/medical needs.

Therefore, the claims will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and (ii) and 1915A(b)(1). However, since it appears plausible that Restrepo may be able to articulate a claim or claims against alternative defendants, he will be given an opportunity to amend the claims.

### F.     Excessive Force/Denial of Clothing

The complaint alleges that during the night of August 29, 2017, while Restrepo was sleeping, the DOC brought the QRT (*i.e.*, quick response team) to his cell. (D.I. 3 at 12.) He alleges he was punched and kicked, the QRT chained him, pulled him out of the PCO room, and slammed him against a wall in the hallway. On September 1, 2017, Restrepo was released from

12

PCO, naked. He alleges he was chained around his feet/ankles (tighter that skin tight) and forced to walk naked from the infirmary, across the prison compound, to another building. (*Id.* at 13.) Restrepo alleges this caused "a lot of swelling" all around the ankles and both feet, as well as bruising with broken and peeled-off skin.

The core judicial inquiry when a prisoner alleges that prison officers used excessive force against the prisoner is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010). For an inmate to prevail on an excessive force claim he must prove two things: (1) that he is incarcerated under conditions posing a substantial risk of harm and (2) that the official knew of and disregarded an excessive risk to the inmate's health and safety. *Farmer*, 511 U.S. at 834-38.

Restrepo appears to state an actionable excessive force claim. However, the claims are directed against the DOC and the QRT, neither of whom are viable defendants. Because of this as currently pled, the complaint fails to state a claim for excessive force.

Therefore, the excessive force claim will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). However, since it appears plausible that Restrepo may be able to articulate a claim against alternative defendants, he will be given an opportunity to amend the claim to name the proper defendants.

### G.  Nakedness/Right to Privacy

As discussed above, the complaint alleges that when the DOC released Restrepo from the PCO on September 1, 2017, he was naked. Restrepo alleges the DOC placed chained around the

ankles and that he was forced to walk "like that" from the infirmary, across the prison compound, to another building. (D.I. 3 at *Id.* at 13.)

Prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care. . . ." *Farmer*, 511 U.S. at 832. There is no Eighth Amendment violation when a prisoner is placed in a strip cell without clothes but is sheltered from the elements. *See Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 229 (3d Cir. 2015) (citing *Williams v. Delo*, 49 F.3d 442, 443-47 (8th Cir. 1995)). However, an Eighth Amendment claim for cruel and unusual punishment may be stated by allegations that an inmate is forced to be naked under circumstances such as a malicious act intended to humiliate the inmate for no legitimate penological reason. *See Chavarriaga*, 806 F.3d at 228-29; *King v. McCarty* 781 F.3d 889, 896, 898 (7th Cir. 2015) (prisoner stated an Eighth Amendment claim for cruel and unusual punishment by alleging that he was "degraded and humiliated by being transported in a see-through jumpsuit that left him exposed in front of other inmates as well as guards of both sexes" for no legitimate reason).

In addition, under the Fourth Amendment, an inmate has a limited right of bodily privacy subject to reasonable intrusions necessitated by the prison setting. *See Parkell v. Danberg*, 833 F.3d 313, 325 (3d Cir. 2016); *See also Bracey v. Secretary Pennsylvania Dep't of Corr.*, 686 F. App'x 130, 136 (3d Cir. 2017) (unpublished) (prisoner right of privacy was not violated when he was housed in in a continuous-camera observation cell for eight months because security cameras were an expected part of the prison environment, the monitors were not manned 24/7 and the likelihood that prisoner was constantly being watched was remote, and there was no

indication that prisoner had any less privacy in the observation cell with respect to showering and toileting than he would have had in communal bathrooms and showers).

Liberally construing the allegations, Restrepo appears to allege he was forced to walk naked across the prison compound and, thus could possibly state actionable claims under the Fourth and Eighth Amendments. However, the claims are directed against the DOC, a defendant who is immune from suit.

Therefore, the Fourth and Eighth Amendment claims relating to the events of September 1, 2017, will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Since it appears plausible that Restrepo may be able to articulate a claim against alternative defendants, he will be given an opportunity to amend the claim to name the proper defendants.

### H. Threats and Grievances

Restrepo submitted a grievance complaining that in early October 2017, DOC staff threated him with physical harm and the use of pepper spray which caused him psychological or mental unease. (D.I. 3 at 13.) This occurred when DOC corrections officers told Restrepo to lock in and if he did not, the corrections officers would call the QRT, spray him, beat him up, and throw him in his cell. (*Id.*) Restrepo complains that the grievance was rejected and nothing was resolved. (*Id.* at 15.) He further complains that many of his grievances are rejected as "returned/unprocessed grievance" or "staff actions are non-grievable" and nothing is ever done. He complains that the grievance process is ineffective.

To the extent Restrepo attempts to raise a claim based upon threats, the claim fails. Verbal abuse of a prisoner, even of the lewd variety, is not actionable under 42 U.S.C. § 1983. *Aleem-X v. Westcott*, 347 F. App'x 731 (3d Cir. 2009) (unpublished) (citing *Patton v. Przybylski*,

822 F.2d 697, 700 (7th Cir. 1987). *See Murray v. Woodburn*, 809 F. Supp. 383, 384 (E.D. Pa. 1993); *see also McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (taunts and threats are not an Eighth Amendment violation); *Prisoners' Legal Ass'n v. Roberson*, 822 F. Supp. 185, 189 (D.N.J. 1993) (verbal harassment does not violate inmate's constitutional rights). Similarly, allegations that prison personnel have used threatening language and gestures are not cognizable claims under § 1983. *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979) (defendant laughed at prisoner and threatened to hang him).

Plaintiff's claims that he was threatened are not cognizable under § 1983. Therefore, they will be dismissed as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1).

With regard to the grievances submitted by Restrepo, the filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006) (unpublished). To the extent that Restrepo bases his claims upon his dissatisfaction with the grievance procedure or denial of his grievances, the claims fail because an inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (unpublished) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Notably, the denial of grievance appeals does not in itself give rise to a constitutional claim as Restrepo is free to bring a civil rights claim in District Court. *Winn v. Department of Corr.*, 340 F. App'x 757, 759 (3d Cir. 2009) (unpublished) (citing *Flick v. Alba*, 932 F.2d at 729).

Restrepo cannot maintain a constitutional claim based upon his perception that his grievances were not properly processed, that they were denied, or that the grievance process is

16

inadequate. Therefore, the Court will dismiss the claim as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## I. Release from Prison

In his prayer for relief, Restrepo seeks an unconditional release and an immediate and permanent transfer from the DOC. A § 1983 complaint is not the proper vehicle for release from confinement. *See Ruffin v. Superintendent Retreat SCI*, 689 F. App'x 112, 113-14 (3d Cir. 2017) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973) ("Congress has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of § 1983.")). Relief in the form of release from prison is not available to Restrepo in a § 1983 action.

## V. CONCLUSION

For the above reasons, the court will dismiss the complaint as frivolous, for failure to state a claim upon which relief may be granted, and based upon the defendants immunity from suit pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i), (ii), and (iii) and 1915A(b)(1) and (2). All the defendants will be dismissed. Restrepo will be given leave to amend the mental health/medical needs claims, the excessive force claims, and the September 1, 2017 release from PCO released naked Fourth and Eighth Amendment claims.

An appropriate order will be entered.

_____
UNITED STATES DISTRICT JUDGE

April 6, 2018
Wilmington, Delaware

17